**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| FREEDOM WATCH, INC.<br><br>                Plaintiff,<br>v.<br><br>JEFF B. SESSIONS, et al<br><br>                Defendants. | Civil Action No.: 1:17-cv-2459-ABJ |

**PLAINTIFFS' MOTION AND MEMORANDUM TO RECUSE/DISQUALIFY JUDGE
AMY BERMAN JACKSON**

### I. INTRODUCTION

Pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144, Plaintiff Freedom Watch, Inc. ("Freedom Watch") hereby moves for the recusal and/or disqualification of the Honorable Amy Berman Jackson ("Judge Jackson") in this matter because Judge Jackson has inherent and manifest political biases and conflicts of interest that mandate her recusal or disqualification.

### II. LEGAL STANDARD

Judge Jackson's inherent and manifest political biases and conflicts of interest make recusal or disqualification necessary under both 28 U.S.C. § 144 and 28 U.S.C. § 455. It is well settled that a judge cannot exercise political biases and have a conflict of interest and remain on a case. This is codified in the Model Rules of Judicial Conduct 2.4(B), which state, "[a] judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment." Judge Jackson's conflicts, which are manifest through demonstrated political bias, mandate recusal.

Furthermore, under 28 U.S.C. § 144:

1

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

This statute is not ambiguous—if the requirements are met, another judge must be assigned to take over the matter. An impartial judiciary is a fundamental component of the system of justice in the United States. The right to a "neutral and detached judge" in any proceeding is protected by the Constitution and is an integral part of maintaining the public's confidence in the judicial system. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972). *See also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980). To ensure that this right is protected, Congress has sought to cure the impartiality of judges by requiring them to step aside, or in some instances, disqualify themselves, in various circumstances.

In order to preserve the integrity of the judiciary, and to ensure that justice is carried out in each individual case, judges must adhere to high standards of conduct." *York v. United States*, 785 A.2d 651, 655 (D.C. 2001).  "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. . .." ABA Code of Judicial Conduct Canon 3(C)(1); *See also Scott v. United States,* 559 A.2d 745, 750 (D.C. 1989) (*en banc*). Disqualification or recusal is required when there is even the appearance that the court's impartiality may be called into question, and "could suggest, to an outside observer, such a 'high degree of favoritism or antagonism' to defendants' position that 'fair judgment is impossible.'" *Liteky v. United States*, 510 U.S. 540, 555, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994)); *See also Jackson v. Microsoft Corp.*, 135 F. Supp. 2d 38, 40 (D.D.C. 2001) (recusal was proper because the judge "ha[d] created an appearance of personal bias or prejudice").

> The disqualification statute, 28 U.S.C. §144, is <u>mandatory and automatic</u>, requiring only a timely and sufficient affidavit alleging personal bias or prejudice of the judge. The judge is a silent defendant, unable to make findings on the truth or falsity of the affiant's allegations, and truth must be presumed. *United States v. Hanrahan*, 248 F. Supp. 471, 474 (D.D.C. 1965) (Emphasis added); and the allegations may be based upon information and belief, *Berger v. United States*, 255 U.S. 22, 34, 65 L. Ed. 481, 41 S. Ct. 230 (1920).

*Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 576 (D.C. 1967) (emphasis added). As evidence of the absolute requirement of impartiality from judicial officers, the U.S. Courts of Appeals for the <u>Fifth</u>, First, Sixth, Tenth, and Eleventh Circuits have said that close questions should be decided in favor of recusal. *See Republic of Pan. v. American Tobacco Co.*, 217 F.3d 343, 347 (5th Cir. 2000) (citing *In re Chevron*, 121 F.3d 163, 165 (5th Cir. 1997)); *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998); *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989).

"The test for personal bias or prejudice in section 144 is identical to that in section 455(b)(1), and the decisions interpreting this language in section 144 are controlling in the interpretation of section 455(b)(1)." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. Cal. 1980). In *Litecky v. United States*, the Supreme Court held that, while "judicial rulings <u>alone</u> never constitute a valid basis for a bias or partiality motion," 510 U.S. at 555 (emphasis added), if the judge succumbs to extrajudicial influence, he is subject to such a motion. Even more, in the absence of an extrajudicial influence, judicial rulings coupled with the requisite "degree of favoritism or antagonism" can serve as the basis for such a motion even "when no extrajudicial source is involved." *Id*. Lastly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" constitute a

basis for such a motion if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

**III. FACTS AND THE LAW AS APPLIED TO THIS CASE.**

Judge Jackson's recusal or disqualification is necessary and absolutely required on numerous compelling grounds. First, Judge Jackson *sua sponte* set an Order to Show Cause why the Court has subject matter jurisdiction over this action, <u>before any Defendant had even appeared in the matter</u>. The fact that she rushed to issue this order on her own, without even a request from the Defendants, evidences her mindset of having pre-judged this matter from its inception.

Furthermore, and consistent with this, her ruling in *Smith v. Clinton*, 1:16-cv-01606-ABJ (the "Defamation Case"), in which Plaintiff's counsel participated, exhibits her deep-seated favoritism toward Democrat political interests and the concomitant and related protection of former Secretary of State Hillary Clinton ("Mrs. Clinton") that evidences and underscores the political extra-judicial prejudice that will directly influence her rulings in this matter. Additionally, Judge Jackson is currently sitting on the Paul Manafort (Mr. Manafort") prosecution, which is directly related to this matter, and her conduct in presiding over Mr. Manafort's prosecution also exemplifies personal and extra judicial bias as well as presents a manifest conflict of interest.

**A. Judge Jackson's Conduct in the Defamation Case Exemplifies a Personal and Political Bias in Favor Democrat Political Interests and of Mrs. Clinton**

This Defamation Case involves Plaintiffs Patricia Smith and Charles Woods – the surviving parents of Sean Smith and Tyrone Woods, who were tragically killed by terrorists during the Benghazi attack in 2012 – who brought suit against Mrs. Clinton alleging that her use of a private email server to transmit sensitive, confidential and classified information directly led

4

to the wrongful deaths of their sons. Mrs. Clinton subsequently defamed Plaintiffs in the public eye to cover up her illegal conduct and preserve her chance to win the Presidency. Judge Jackson dismissed Ms. Smith and Mr. Woods's claims on non-meritorious and contrived grounds, and this matter is currently on appeal with the U.S. Court of Appeals for the District of Columbia Circuit. A strong example of her strongly politicized bias was that - in direct response to Mr. Klayman being critical of Mrs. Clinton in a pleading - Judge Jackson issued a minute order on November 23, 2016 essentially gagging Plaintiffs from criticizing Mrs. Clinton, and ordering that "plaintiffs utilize the additional time to review and edit the pleading carefully to ensure that the unnecessarily vituperative and sarcastic tone of the previous pleading is eliminated." This type of order protecting Mrs. Clinton clearly shows her agenda to protect the political interests of Democrats and Mrs. Clinton at any cost. Furthermore, the timing of her dismissal was also particularly egregious and vindictive. Judge Jackson, who was appointed to the bench by President Barack Obama, chose to dismiss Plaintiffs' claims on the Friday before Memorial Day – the holiday during which Plaintiffs are grieving in particular over the deaths of their sons and the national holiday to remember the lives and sacrifices of their sons. Mr. Woods is a member of a Gold Star family, as the father of a slain Navy SEAL. Ms. Smith is the mother of a slain former CIA contractor who was doing work for the U.S. Government as a reported CIA undercover agent. The timing of Judge Jackson's ruling is quite simply, too insensitive to be "coincidental." The timing of Judge Jackson's decision was likely calculated to inflict additional emotional distress on Plaintiffs. Indeed, Mrs. Clinton served under President Barack Obama, who appointed Judge Jackson. Judge Jackson, who is clearly very intelligent, as she attended and graduated from Harvard University for both her undergraduate and law school studies, also

5

understands the politics at play. The timing of her decision appears to be motivated by an attempt to curry favor with and protect Mrs. Clinton, should she choose to run for President again.

This deep-seated blatant political bias and prejudice in favor of the interests of Democrats and Mrs. Clinton clearly mandates recusal, given the subject matter of the instant Complaint – an investigation into the torrent of leaks coming from Special Prosecutor Robert Mueller ("Mr. Mueller") and his staff with regard to President Trump's Russia Investigation (the "Mueller Investigation"). Indeed, the Mueller Investigation itself was is strongly supported by Mrs. Clinton and the Democratic National Committee, among other leftist interests. Mr. Mueller was appointed as Special Counsel to investigate this matter by Deputy Attorney General Rod Rosenstein, an Obama holdover as the former Obama U.S. Attorney for the District of Maryland, only after Attorney General Jeff Sessions recused himself. Furthermore, as reported by the Washington Post, "The Hillary Clinton campaign and the Democratic National Committee helped fund research that resulted in a now-famous dossier containing allegations about President Trump's connections to Russia…."[1]

> Marc E. Elias, a lawyer representing the Clinton campaign and the DNC, retained Fusion GPS, a Washington firm, to conduct the research…. Elias and his law firm, Perkins Coie, retained the company in April 2016 on behalf of the Clinton campaign and the DNC…. The Clinton campaign and the DNC, through the law firm, continued to fund Fusion GPS's research through the end of October 2016, days before Election Day.[2]

Thus, given the confirmed link between Democrats, Mrs. Clinton and the Mueller Investigation – and the admitted desire to bring down President Trump and his presidency for political purposes, and the fact that Judge Jackson has exhibited a deep seated personal and political bias in favor of

---

[1] Adam Entous, Devlin Barrett, Rosalind Helderman, *Clinton campaign, DNC paid for research that led to Russia dossier*, Washington Post, Oct. 24, 2017, available at: https://www.washingtonpost.com/world/national-security/clinton-campaign-dnc-paid-for-research-that-led-to-russia-dossier/2017/10/24/226fabf0-b8e4-11e7-a908-a3470754bbb9_story.html?utm_term=.28e63c5d846f.

[2] *Id*.

the interests of Democrats and Mrs. Clinton, apparently aiming to protect and shield her from facing repercussions from her conduct, it would therefore logically follow that Judge Jackson will do everything in her power to prevent this instant matter from going forward as already demonstrated by her *sua sponte*, even before Defendants counsel entered an appearance, shortly after this Complaint was filed and news in the media appeared of this action, issuing an order to show cause why this matter should not be summarily dismissed. A thorough investigation into the torrent of leaks coming from Mr. Mueller and his staff may very well lead directly to Democrats and Mrs. Clinton, who has strongly supported the Mueller Investigation in the first place and wants to see that it results in the destruction of the Trump presidency for political purposes.

### B. Judge Jackson Sits on Mr. Manafort's Prosecution

Another strong basis for Judge Jackson's recusal or disqualification is the fact that she is the judge assigned to the prosecution of Mr. Manafort, who was indicted as a direct result of the Mueller Investigation. This, in and of itself, constitutes a clear conflict of interest in the instant matter, which involves the torrent of leaks coming from Mr. Mueller and his staff regarding the Mueller Investigation, since Judge Jackson has personal knowledge of the facts and a clear opportunity and motive to pre-judge the matter, given her clear-cut personal and political biases and preconceptions, as set forth above. As a former FBI director and close friend of James Comey, Mr. Mueller himself has a conflict of interest, magnified by the leftist pro-Clinton and compromised prosecutors he has hired at great taxpayer expense. Yet, Judge Jackson has taken no action to address these manifest conflicts of interest or the clear leaks of grand jury proceedings that have been emanating from Mueller and his prosecutors on a daily basis, sometimes several times a day – all designed to damage Mr. Manafort, his partner Rick Gates


and other putative defendants, including the president himself. As these leaks are likely criminal in nature, Judge Jackson, as part of her oath of office and ethical duties as a jurist, has a duty to herself take action to stop these apparent leaks:

> Not only do observers describe Mueller and the man he recommended to replace him as FBI director, James Comey, as close or even best friends, but the special counsel pursues an investigation heavily involving the bureau he once led. How one maintains detachment in leading a team that includes numerous anti-Trump partisans in a probe involving one's close friend and the former bureau for which Mueller served as director goes unexplained […] If the surveillance and investigatory methods prove unlawful, [former FBI assistant director James] Kallstrom notes that this puts Mueller in an awkward position of looking into his close friend and perhaps the bureau that both men once led.[3]

Indeed, Judge Jackson's biases are already manifested in the Manafort Prosecution, and it is apparent that she has already prejudged this matter. As set forth in the Complaint, and has become even more apparent after the Complaint was filed, there have been a torrent of leaks coming from Mr. Mueller and his staff regarding the Mueller Investigation, specifically regarding Mr. Manafort. For instance, *see* Comp. Ex 1 at 11:

> The U.S. special counsel investigating possible ties between the Donald Trump campaign and Russia in last year's election is examining a broad range of transactions involving Trump's businesses as well as those of his associates, according to a person familiar with the probe.
>
> FBI investigators and others are looking at Russian purchases of apartments in Trump buildings, Trump's involvement in a controversial SoHo development in New York with Russian associates, the 2013 Miss Universe pageant in Moscow and Trump's sale of a Florida mansion to a Russian oligarch in 2008, the person said. The investigation also has absorbed a money-laundering probe begun by federal prosecutors in New York into Trump's former campaign chairman Paul Manafort.

---

[3] Daniel J. Flynn, *Bob Mueller 'Has a Huge Conflict of Interest,' Says Former Assistant FBI Director*, Breitbart, December 4, 2017, available at: www.breitbart.com/big-government/2017/12/04/bob-mueller-has-a-huge-conflict-of-interest-says-former-assistant-fbi-director/

Mr. Mueller and his team have periodically leaked additional information pertaining to its investigation and criminal proceeding of Mr. Manafort and his business partner Rick Gates, including details of their investigation and criminal prosecution:

> Former Trump campaign chairman Paul Manafort was ghostwriting an op-ed while out on bail last month with a Russian who has ties to the Russian intelligence service, Justice Department Special Counsel Robert Muller's team said Monday.
>
> In a new filing Monday afternoon, Mueller's investigators said Manafort was working on an editorial in English as late as last Thursday and that it related to his political work for Ukraine, which factored into his money-laundering and foreign lobbying criminal charges.
>
> The filing asks for the court to revisit a bail agreement Mueller's office and Manafort's lawyers made jointly last week.[4]

The Huffington Post has published further leaks from Mr. Mueller's team related to Mr. Manafort's alleged connections to Russian intelligence:

> Federal prosecutors asserted Monday that a longtime associate of Paul Manafort, the former chairman of President Trump's campaign, has been "assessed to have ties" to Russian intelligence — the first time the special counsel has alleged a Trump official had such contacts.
>
> The statement came as prosecutors working for special counsel Robert S. Mueller III withdrew their support for a joint bail deal filed last week that would have released Manafort from home detention and GPS monitoring while he awaits trial on charges including money laundering and fraud.

Mr. Mueller and his staff have also blatantly released other apparent confidential information related to grand jury proceedings and this criminal prosecution. For example, one media outlet has reported that:

> Special counsel Robert Mueller's team has questioned Sam Clovis, co-chairman of President Donald Trump's election campaign, to determine if Trump or top aides knew of the extent of the campaign team's contacts with Russia, two sources familiar with the investigation said on Friday […] 'The ultimate question

---

[4] Katelyn Polantz, Manafort worked on op-ed with Russian while out on bail, prosecutors say, CNN Politics, December 4, 2017, available at: www.cnn.com/2017/12/04/politics/manafort-bail-russian-intelligence/index.html

> Mueller is after is whether candidate Trump and then President-elect Trump knew of the discussions going on with Russia, and who approved or even directed them,' said one source.[5]

There have been even more leaks of grand jury information with regard to the investigation of President Trump's advisers, including Jared Kusher and Michael Flynn. It has recently been reported that:

> President Trump's son-in-law and adviser, Jared Kushner, met this month with investigators working for Robert S. Mueller III, the special counsel, and answered questions about a meeting with a Russian ambassador during the presidential transition, according to a person briefed on the investigation.
>
> The questions focused on a meeting in December between Mr. Kushner, the ambassador and Michael T. Flynn, who at the time was the president's incoming national security adviser, the person said on Wednesday.
>
> Prosecutors also asked Mr. Kushner about other interactions between Mr. Flynn and the Russian government, the person briefed on the investigation said.[6]

Additional sensitive information has been leaked regarding grand jury testimony related to Michael Flynn, President Trump's former national security adviser:

> Prosecutors working with special counsel Robert Mueller have postponed grand jury testimony related to the private business dealings of former national security adviser Michael Flynn.
>
> That's according to a person familiar with the matter who spoke on condition of anonymity to discuss an ongoing investigation. The reason for the postponement was not immediately clear, but it comes one week after an attorney for Flynn alerted President Donald Trump's legal team that they could no longer share information about the case.
>
> That discussion was seen as a possible indication Flynn was cooperating with Mueller's investigation or attempting to negotiate a deal.[7]

---

[5] Mark Hosenball and John Walcott, *Investigators probe Trump knowledge of campaign's Russia dealings: sources*, Reuters, November 10, 2017, available at: https://www.reuters.com/article/us-usa-trump-russia-investigation/investigators-probe-trump-knowledge-of-campaigns-russia-dealings-sources-idUSKBN1DB04J.

[6] Matt Apuzzo, *Mueller's Prosecutors Are Said to Have Interviewed Jared Kushner on Russia Meeting*, New York Times, November 29, 2017, available at: https://www.nytimes.com/2017/11/29/us/politics/mueller-jared-kushner-russia.html.

NBC News has also come forth with leaked details of Mr. Mueller's investigation of Michael Flynn:

> Mueller is applying renewed pressure on Flynn following his indictment of Trump campaign chairman Paul Manafort, three sources familiar with the investigation told NBC News.
>
> The investigators are speaking to multiple witnesses in coming days to gain more information surrounding Flynn's lobbying work, including whether he laundered money or lied to federal agents about his overseas contacts, according to three sources familiar with the investigation.

Not long after this information was released, explicit details of Michael Flynn's cooperation with Mr. Mueller were leaked to the media as quickly as it occurred:

> [ABC reporter, Brian Ross,] said Friday morning Flynn has promised special counsel Robert Mueller, who is spearheading the Department of Justice's Russia probe, 'full cooperation.' That includes, according to Ross, testifying against Trump, members of the Trump family, and White House officials. Part of the testimony, Ross said, will be that Trump ordered Flynn to contact the Russians. He is reportedly cooperating with Mueller's team as the DOJ tries to ascertain whether the Trump campaign colluded with Russia […] Ross also reported that Flynn decided to cooperate with Mueller within the last 24 hours and that he feels he's doing his patriotic duty by testifying against Trump[8]

Even more sensitive details of the Michael Flynn investigation and criminal charges are being released to this day. Several media outlets have obtained sensitive grand jury and other confidential information related to Mr. Mueller's investigation:

> The New York Times obtained emails showing that then-transition adviser KT McFarland, who later became deputy national security adviser under Michael Flynn, wrote that the Obama administration's sanctions against Russia for interfering in the 2016 election would make it harder to improve relations between the two countries […] McFarland also wrote in the emails that the

---

[7] *Robert Mueller team delays Michael Flynn grand jury testimony*, NY Daily News, November 29, 2017, available at: http://www.nydailynews.com/news/politics/robert-mueller-team-delays-michael-flynn-grand-jury-testimony-article-1.3666142.

[8] Jason Devaney, *ABC News: Flynn Prepared to Testify Trump Directed Him to Contact Russians*, News Max, December 1, 2017, available at:
https://www.newsmax.com/t/newsmax/article/829317?ns_mail_uid=92174039&ns_mail_job=1766933_12012017&s=al&dkt_nbr=010502rlqxzc&section=headline&keywords=michael-flynn-russia-robert-mueller&year=2017&month=12&date=01&id=829317&aliaspath=%2FManage%2FArticles%2FTemplate-Main&oref=news.newsmax.com.

> Obama administration's sanctions on Russia were meant to discredit Trump's 2016 election victory.[9]

CNN News has even reported information related to private conversations between President Trump and White House chief counsel, Donald McGahn:

> The White House's chief lawyer told President Donald Trump in January he believed then-national security adviser Michael Flynn had misled the FBI and lied to Vice President Mike Pence and should be fired, a source familiar with the matter said Monday.
>
> The description of the conversation raises new questions about what Trump knew about Flynn's situation when he urged then-FBI Director James Comey to drop the investigation into Flynn and whether anyone in the White House, including the President himself, attempted to obstruct justice. Special counsel Robert Mueller is investigating whether the Trump campaign colluded with Russians, a probe led by Comey until Trump fired him.
>
> White House counsel Donald McGahn told Trump that based on his conversation with then-acting Attorney General Sally Yates, he believed Flynn had not told the truth in his interview with the FBI or to Pence, the source said.[10]

Further details of Mr. Mueller's on-going grand jury investigation into President Trump and his finances are also being released. Reuters has reported that:

> A U.S. federal investigator probing alleged Russian interference in the 2016 U.S. presidential election asked Deutsche Bank for data on accounts held by President Donald Trump and his family, a person close to the matter said on Tuesday.
>
> Germany's largest bank received a subpoena from Special Counsel Robert Mueller several weeks ago to provide information on certain money and credit transactions, the person said, without giving details, adding key documents had been handed over in the meantime […]
>
> A U.S. official with knowledge of Mueller's probe said one reason for the subpoenas was to find out whether Deutsche Bank may have sold some of

---

[9] Daniella Diaz, *NYT: Emails show senior Trump transition official saying Russia 'has just thrown the USA election to him'*, CNN Politics, December 2, 2017, available at: http://www.cnn.com/2017/12/02/politics/michael-flynn-russia-emails-donald-trump/index.html.

[10] Kara Scannell, WH lawyer told Trump that Flynn misled FBI and Pence, CNN Politics, available at: www.cnn.com/2017/12/04/politics/wh-lawyer-told-trump-flynn-misled-fbi-pence/index.html

> Trump's mortgage or other loans to Russian state development bank VEB or other Russian banks that now are under U.S. and European Union sanctions.[11]

Unsurprisingly, several legislators, such as Congressman Trey Gowdy, have denounced these leaks as criminal behavior:

> "It is kind of ironic that the people in charge of investigating the law and executing the law would violate the law," Gowdy told Fox News Sunday. "Make no mistake, disclosing grand jury material is a violation of the law. So as a former prosecutor, I am disappointed that you and I are having the conversation because somebody violated their oath of secrecy."[12]

Yet, the torrent of leaked confidential information continues to occur rampantly despite its clear unlawful nature. And, most importantly, Judge Jackson, who sits atop the criminal prosecution of Manafort and his partner Rick Gates, has done nothing to address these criminal leaks, obviously designed to harm and effectively destroy the defendants (and even the president himself) before they are even judged by a jury of their peers.

These so-called "sources" very likely originate from Mr. Mueller and his staff, which warrants a thorough investigation by Judge Jackson, as the presiding judge on the Manafort Prosecution. Indeed, as the presiding judge on the Manafort Prosecution, Judge Jackson has an independent duty to determine where these leaks are coming from. *See* Model Code of Judicial Conduct 2.8(a) ("A judge shall require order and decorum in proceedings before the court.") *See also id.* at 2.3(b) ("A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment."); *id.* at 2.5 ("A judge shall perform judicial and administrative duties, competently and diligently. A judge shall cooperate with other judges and court officials in the administration of court business."); *id.* at Preamble ("Thus, the judiciary

---

[11] Arno Shuetze and Nathan Layne, Deutsche Bank gets subpoena from Mueller on Trump accounts: source, Reuters, December 5, 2017, available at: www.reuters.com/article/us-usa-trump-deutsche-bank/deutsche-bank-gets-subpoena-from-mueller-on-trump-accounts-source-idUSKBN1DZ0XN.

[12] Victoria Guida, *Gowdy hits grand jury leaks in Russia probe*, Politico, October 29, 2017, available at: https://www.politico.com/story/2017/10/29/trey-gowdy-trump-russia-probe-244286.

plays a central role in preserving the principles of justice and the rule of law. Inherent in all the Rules contained in this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system. Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence.") This investigation should have been performed *sua sponte* by Judge Jackson, as part of her duties as a federal judge presiding over the Manafort Prosecution, notwithstanding Freedom Watch's Request for Investigation to the Office of the Inspector General and the Office of Professional Responsibility. Comp. Ex. 1.

However, instead of conducting this investigation, as is her duty, Judge Jackson has instead chosen to issue a gag order limiting comments to the media and the public by lawyers, defendants, and witnesses in the case.[13] A gag order is entirely inappropriate at this stage. This Court has itself deemed a gag order as a "drastic step."[14] "Most courts that have analyzed the issue have required that pretrial publicity pose a "reasonable likelihood" of prejudicing the defendant's right to a fair trial before entering a gag order."[15] Here, there has not even been an empaneled jury, and the gag order issued only serves to harm Mr. Manafort. Such a broad order would only arguably be proper after a jury had been empaneled, which is clearly not the case here, even though the less restrictive means of simply performing *voir dire* or sequestering the eventual jury could arguably be employed, rather than abridging sacrosanct First Amendment

---

[13] Josh Gerstein, Darren Samuelsohn, *Judge issues gag order in Manafort, Gates case*, POLITICO, Nov. 8, 2017, available at: https://www.politico.com/story/2017/11/08/gag-order-issued-in-manafort-gates-case-244691
[14] *United States v. Morrow*, 2005 U.S. Dist. LEXIS 8330, *22
[15] *Id*. at 20.

14

rights. While Freedom Watch takes no stance on Mr. Manafort's or his partner's Rick Gates' innocence or guilt, this gag order is a clear political tool, in that it effectively allows the leftist pro-Democrat, and viciously anti-Trump media to destroy Mr. Manafort's and his partner's Rick Gates' personal and business reputations and livelihood before he is tried without allowing him or his counsel to offer up any defense. It is apparent that Judge Jackson believes that smearing Mr. Manafort and Mr. Gates is a tool to smear President Trump, and is allowing the media and others to paint Mr. Manafort as a type of criminal mastermind who was doing President Trump's bidding during his presidential campaign, without even the means to publicly defend themselves. In that same vein, Mr. Manafort has been confined to house arrest, pending trial, despite the fact that Mr. Manafort poses no apparent flight risk given the amount of proposed bail and bond in particular, and thus has no incentive to attempt to escape anywhere. Mr. Manafort has been confined to house arrest, and even been ordered by this Court to "wear GPS devices" and "not…consume alcohol" during the Thanksgiving holiday.[16] This too serves only to smear Mr. Manafort as a hardened criminal in an apparent attempt to smear President Trump by association in the leftist media and elsewhere. This falls in line with Judge Jackson's clear leftist, Democrat pro-Clinton, pro-Obama ideologies and is hard evidence that she has already prejudged this instant matter.

In addition, Judge Jackson's personal and political biases are exemplified by the improper authority she has given Mr. Mueller during his investigation of Mr. Manafort and his partner Rick Gates. Judge Jackson has appeared to have even allowed Mr. Mueller to, in effect, determine the bail set for Mr. Manafort during his prosecution:

---

[16] *See* Rebecca Savaransky, *Judge grants Manafort, Gates 'limited release' for Thanksgiving*, THE HILL, Nov. 21, 2017, available at: http://thehill.com/business-a-lobbying/361397-judge-grants-manafort-business-associate-limited-release-for-thanksgiving**.**

> Former Trump campaign chairman Paul Manafort has reached a bail deal with prosecutors led by special counsel Robert S. Mueller III, agreeing to secure his release with four properties worth $11.6 million, forgo foreign travel and limit his travel within the United States […] The deal is subject to approval by U.S. District Judge Amy Berman Jackson of Washington, who ordered prosecutors Thursday afternoon to state their agreement with the proposed deal in writing.[17]

However, after this bail agreement was reached, Judge Jackson is apparently allowing Mr. Mueller to renege, based on his position that Manafort violated the jurist's otherwise unconstitutional gag order, which Plaintiff asserts was obviously put into effect for political purposes. After agreeing to the $11.6 million bail agreement, Judge Jackson is apparently willing to consider allowing Mr. Mueller to pull the deal based merely on speculation that Mr. Manafort "ghost-wrote" an editorial about his political work in Ukraine.[18] Therefore, it is abundantly clear that Judge Jackson is not the impartial adjudicator that would be proper in this matter and she should be removed from this proceeding immediately.

## IV. CONCLUSION

Based on the foregoing, Freedom Watch respectfully request that, pursuant to both 28 U.S.C. § 455 and 28 U.S.C. § 144, that Judge Jackson recuse herself or be disqualified and that this case must be immediately transferred to a different judge, as required by law.[19]

///

///

---

[17] Spencer S. Hsu, Paul Manafort reaches bail deal with Mueller probe prosecutors for judge's approval, The Washington Post, November 30, 2017, available at: www.washingtonpost.com/local/public-safety/paul-manafort-announces-proposed-bail-deal-with-mueller-probe-prosecutors-for-judges-ok/2017/11/30/7c0deede-d607-11e7-a986-d0a9770d9a3e_story.html?utm_term=.d8a4decd08ca

[18] Chris Megerian, *Special counsel backs out of bail deal with Paul Manafort, saying he tried to hide a public relations effort*, LA Times, Dec. 4, 2017, available at: http://www.latimes.com/politics/washington/la-na-pol-essential-washington-updates-paul-manafort-secretly-worked-on-1512425542-htmlstory.html

[19] As counsel has for Defendants have yet appeared in this matter, Freedom Watch is unable to seek consent from counsel for Defendants for the filing of this instant motion.

Dated: December 6, 2017                                    Respectfully submitted,

                                                             */s/ Larry Klayman*
                                                             Larry Klayman, Esq.
                                                             FREEDOM WATCH, INC.
                                                            2020 Pennsylvania Ave NW, #345
                                                            Washington, DC, 20006
                                                            Tel: 310-595-0800
                                                            Email: leklayman@gmail.com

## **CERTIFICATE OF COUNSEL**

      I, Larry Klayman, Esq., am counsel for Plaintiffs in this matter. I hereby certify that this Motion and the accompanying affidavit and facts contained therein, made pursuant to 28 U.S.C. § 144, is being made in good faith.

                                                                 */s/ Larry Klayman*
                                                                 Attorney

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 6th day of December, 2017, a true and correct copy of the foregoing was filed and via CM/ECF and served by Federal Express Overnight Delivery upon all parties listed below:

The Honorable Robin C. Ashton
Office of Professional Responsibility
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC, 20530

The Honorable Jeff B. Sessions
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC, 20530

The Honorable Michael Horowitz
Office of the Inspector General
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC, 20530

The Honorable Christopher Wray
Director of the Federal Bureau of Investigation
Federal Bureau of Investigation
935 Pennsylvania Ave NW
Washington, DC, 20535

                                                              */s/ Larry Klayman*